MICHAEL MALTER, SBN 96533
JULIE ROME-BANKS, SBN 142364
BINDER & MALTER LLP
2775 Park Avenue
Santa Clara, CA 95050
Telephone:     [408] 295-1700
Telefacsimile: [408] 295-1531

Attorneys for Debtor and Debtor in Possession

K. JOHN SHAFFER, SBN 153729
Stutman, Treister & Glatt PC
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067
Telephone:   [310] 228-5600
Facsimile:   [310] 228-5788

MAUREEN A. HARRINGTON, SBN 194606
McGRANE GREENFIELD LLP
One Ferry Building, Suite 200
San Francisco, CA 94111
Telephone:     [415] 283-1776
Telefacsimile: [415] 283-1777

Attorneys For Official Unsecured Creditor's Committee

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re<br>JASMINE NETWORKS, INC.<br>　　　Debtor. | Case No. 02-54815-MM<br>(Chapter 11) |
| JASMINE NETWORKS, INC., Debtor in Possession,<br>　　　Plaintiff<br>v.<br>MARVELL SEMICONDUCTOR, INC., a California corporation,<br>　　　Defendant. | Adversary Proceeding No.<br><br>COMPLAINT FOR INJUNCTIVE RELIEF |

Comes now Plaintiff Jasmine Networks, Inc., Debtor in Possession ("Jasmine"), and alleges as follows:

## JURISDICTION

1. In this adversary proceeding, Jasmine seeks injunctive relief to enforce the rule of *Barton v. Barbour*, 104 U.S. 126 (1881) (the "Barton Doctrine"), the automatic stay of Bankruptcy Code section 362(a), and this Court's exclusive jurisdiction over the administration of the chapter 11 estate. Jasmine also seeks injunctive relief to prevent any challenge in state court to the disclosure of certain publicly available information to creditors and potential investors, in accordance with Bankruptcy Code sections 363 and 1125. Finally, Jasmine seeks appropriate damages and sanctions on account of the violation of the Barton Doctrine and the automatic stay.

2. This Court has jurisdiction over the subject matter of this complaint under 28 U.S.C. §1334. This is a core proceeding under 28 U.S.C. §157(b)(2)(A) and (O).

## VENUE

3. Venue is proper in this court under 28 U.S.C. §1409.

## PARTIES

4. Jasmine is a Delaware corporation authorized to do business in the State of California. Jasmine's former principal place of business was located in San Jose, California.

5. Jasmine filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on August 28, 2002, and is a debtor and debtor-in-possession under the Bankruptcy Code.

6. Defendant Marvell Semiconductor, Inc. ("Marvell") is a California corporation authorized to and doing business in the State of California. Marvell

filed an unsecured claim in this action, subjecting itself to the jurisdiction of this Court.

## GENERAL ALLEGATIONS

7. On September 12, 2001, (prior to its bankruptcy filing) Jasmine filed an action against Marvell in the Santa Clara County Superior Court, as Case No. CV 801411, for unfair competition, misappropriation of trade secrets, and violations of California Business & Professions Code §17200 (the "Marvell Litigation.") The Marvell Litigation is the single largest asset of the Jasmine estate, and presents the only possibility that the unsecured creditors will obtain any significant distribution on their claims.

8. Jasmine's complaint is based on Marvell's use and misappropriation of Jasmine's technology during the course of negotiations between Jasmine and Marvell. Jasmine and Marvell had entered into a tentative agreement for the sale of certain intellectual property from Jasmine to Marvell, and were engaged in due diligence regarding the proposed deal. Not satisfied with simply purchasing Jasmine's technology in the normal course, Marvell conspired to acquire the intellectual property relating to semiconductor designs (application specific integrated circuits or "ASICs") along with a group of Jasmine engineers, all in violation of the non-disclosure agreement entered into by the parties. Unfortunately for Marvell, Jasmine discovered the conspiracy, partially through a piece of evidence that Marvell claims is protected by the attorney-client communication privilege (the "Disputed Evidence").

9. Upon discovery of Marvell's actions, Jasmine filed the Marvell Litigation in the Superior Court seeking compensation for the contractual and tortious misdeeds of Marvell and the Marvell Defendants. Jasmine incorporated into its complaint portions of the Disputed Evidence.

10. In response to Jasmine's complaint, Marvell sought and ultimately obtained a preliminary injunction issued by the Superior Court on January 7, 2002, which prohibited the Debtor from disclosing or using the Disputed Evidence which Marvell claimed to be confidential, in support of Jasmine's complaint (the "Preliminary Injunction"). The Preliminary Injunction, a true and correct copy of which is attached hereto as Exhibit 1, precludes use of "Privileged Communications" but offers no definition of what a "Privileged Communication" consists of.

11. On or about November 13, 2002, the Bankruptcy Court issued its "Order Granting Relief from the Automatic Stay" to allow the Marvell Litigation to proceed (the "Relief from Stay Order"). The Relief from Stay Order does not authorize anyone to seek quasi-criminal contempt sanctions against the Debtor or its counsel. Nor does the Relief from Stay Order purport to waive the Barton Doctrine, or otherwise permit Marvell to pursue claims in violation of it. In fact, the Relief from Stay Order specifically states that "[n]o party shall collect any money judgment, monetary sanctions or other form of pecuniary damages from Jasmine without further order of the Bankruptcy Court."

12. Jasmine appealed the Preliminary Injunction to the Sixth Appellate District, in the Courts of Appeal of the State California as Case No. HO23991. The Courts of Appeal heard oral argument on April 6, 2004, during which argument Justice Conrad Rushing read a substantial portion of the voicemail from the bench.

13. Just two days later on April 8, 2004, the Courts of Appeal issued its published, unanimous decision fully reversing the Superior Court's order granting the Preliminary Injunction. The opinion, authored by Justice Conrad Rushing, was certified for publication in the official reporter and assigned the citation of 117

Cal.App.4th 794 (the "Opinion"). The Opinion concluded that Marvell had waived any privilege claims for the contents of the Disputed Evidence; that the Superior Court should consider the contents of the Disputed Evidence under California law; and that sufficient evidence was present to allow application of the crime-fraud exception to the attorney-client privilege.

14.  The Opinion sets forth verbatim much of the Disputed Evidence. The Opinion has been widely disseminated on the internet, and has been the source of much commentary from legal and corporate circles, since it governs the impact of the crime fraud exception and potential waiver of privilege upon communications between in house counsel and executives. The Opinion was widely reported by national media outlets, including CNN, CBS Marketwatch, and Forbes. The Opinion also received significant discussion in numerous legal publications and websites. Although the decision is not precedential, it is still (more two years after it was decided) available through the California Courts of Appeal's website, at the California Supreme Court, on LEXIS and Westlaw, and at the end of any reasonably well-tailored Google search.

15.  Even Marvell's own website prominently features excerpts of the Disputed Evidence. Marvell has posted a recent article from Forbes published on August 14, 2006, which describes the Disputed Evidence. The article may be found by clicking on the first listed "Highlight" at the Marvell.com homepage. The article contains the following statement with respect to the Marvell Litigation and a quote from the Disputed Evidence:

> Marvell has a certain win-at-all-costs reputation. In 2001 it was negotiating to buy the patents of a company called Jasmine Networks. Some Marvell executives forgot to hang up the phone after leaving a voice mail with Jasmine and were overheard seemingly plotting to steal the technology. Marvell's patent attorney Eric Janofsky wondered aloud if Sehat [Sutardja, Marvell's Founder]

would go to jail and moments later remarked: "If we took the [intellectual property] on the pretense of just evaluating it. …" Jasmine, now bankrupt, sued Marvell, which denies it was acting underhandedly. The case is in court.

Simply put, the bulk of the content of the Disputed Evidence - and certainly sufficient content to render no part of that communication "confidential" or "privileged" - is available on the internet to anyone who cares to look. From reporters to bar associations to attorneys, the Opinion and an extensive portion of the Disputed Evidence has been reviewed, repeated, excerpted and crowed over, even on Marvell's own website.

16. On May 18, 2004, Marvell filed a Petition for Review with the California Supreme Court seeking the Court's reconsideration of the Court of Appeal's decision. On July 21, 2004, the Supreme Court granted review, but deferred all briefing in the Marvell Litigation until the Supreme Court has issued a decision in another case, *Rico vs. Mitsubishi*, Supreme Court No. S123808. The *Rico vs. Mitsubishi* case has been fully briefed since May 2005, but no oral argument has yet been scheduled.

17. In the meantime, Marvell sought to derail the Marvell Litigation by turning to the Bankruptcy Court and seeking appointment of an examiner to purportedly determine the value of the intellectual property owned by Jasmine and which Marvell was supposed to purchase. In conjunction with its opposition to the motion to appoint an examiner and in reliance on the Opinion dissolving the Preliminary Injunction, Jasmine filed with the Bankruptcy Court a copy of the Disputed Evidence and the Opinion. The purpose of providing these documents to the Bankruptcy Court was to show that Jasmine's technology was truly valuable, as was the Marvell Litigation. On the latter point, the status of admission of key evidence is obviously relevant.

18. Marvell has claimed that the filing of the Disputed Evidence was in contempt of the Preliminary Injunction. However, Marvell did not seek redress in this Court. The Superior Court, upon application by Marvell, issued an Order to Show Cause re Contempt on November 18, 2005, commanding that the Debtor and its counsel, Michael Malter (who was neither counsel in the Marvell Litigation, nor a party thereto), show cause why they should not be held in contempt (the "Contempt Action"). The only purported acts of contempt addressed by the Contempt Action are the brief and supporting declarations in opposition to the examiner motion that were filed in this Court by the Debtor through its counsel, Michael Malter.

19. Marvell did not seek further relief from the automatic stay, or any other permission of this Court before initiating the Contempt Action in the Superior Court against the Debtor and its counsel, Mr. Malter, notwithstanding the fact that the Contempt Action seeks to recover monetary relief against the Debtor and Mr. Malter for actions taken before this Court in the proper administration of this bankruptcy case. Moreover, it is clear that the Court did not, in *2002*, lift the automatic stay so that Marvell could pursue claims against the Debtor and its counsel for a pleading they filed in this Court in *2005*.

20. At the initial trial date on the Contempt Action, Jasmine and Mr. Malter moved for judgment on the pleadings, claiming that there was no violation of the Preliminary Injunction as a matter of law in light of the Opinion, or, alternatively, since the status of the Preliminary Injunction was unknown there could be no willful violation of that order sufficient to justify contempt. This motion was denied by the Superior Court, and Jasmine's subsequent writ petitions to the Court of Appeal and the Supreme Court were denied. Trial is now set for December 18, 2006 in the Contempt Action.

21. The Debtor has received an offer to fund a Plan of Reorganization. The proposed funding source is willing pay sufficient funds to make a partial cash distribution to creditors, who will also receive shares in the reorganized Debtor on a pro-rata basis. The party providing the funding will receive the controlling interest in the reorganized debtor, and has promised to aggressively pursue the Marvell Litigation.

22. Jasmine filed a motion to approve procedures for potential overbidding of the offer to fund the Plan. This Court directed at its July 14, 2006 hearing on that motion that, if the Debtor wants to proceed with its investor-based plan, the Debtor must competitively market the opportunity to invest in the Marvell Litigation to other potential investors, so that a competitive bidding process may take place, the estate may receive the greatest possible value, and the requirements of Bankruptcy Code section 363 are fulfilled. This Court also directed at its July 14 hearing that, before a disclosure statement could be approved, creditors had to be provided with additional information about the Marvell Litigation so that they could better assess the value of that litigation and the potential recoveries they might receive as a result of the litigation.

23. Marvell, however, has claimed that even mentioning the fact that a Google search can lead to copies of the Opinion is a violation of the Preliminary Injunction. Thus, the Debtor is in the position of not being able to market this asset of the Debtor as required in this action for fear that a contempt citation will issue in the Superior Court. The Debtor simply cannot tell what information it can provide to potential bidders, and whether or not supplying that information will subject the Debtor and/or counsel to liability. The Debtor also is restrained from sharing relevant information regarding the value of this estate asset with its creditors.

24. The proposed Plan and its funding source cannot be approved by this Court without an opportunity being given for other parties to overbid. If appropriate procedures cannot be established for this overbid process, including setting the parameters of what information may be disclosed to potential bidders, the Plan process cannot go forward a potential funding source will be lost. In that event, creditors will receive no distribution until the Marvell Litigation is successfully completed, a potential event which may not occur for years.

25. The Preliminary Injunction is preventing the Debtor from attracting potential bidders for its assets, thereby interfering with the administration of this case and potential recovery for the unsecured creditors. Without immediate intervention by the Court, the Debtor cannot market the asset sufficient to meet its obligation to show this Court (and the creditors) that it has made a reasonable effort to market the estate's chief asset, the Marvell Litigation. Nor can the Debtor provide full disclosure to its creditors. The Debtor is thus prevented from going forward with a plan or reorganization that will provide an immediate cash payment to the creditors, as well as the potential share in any eventual recovery on the Marvell Litigation.

26. As a direct, proximate result of Marvell's actions as alleged herein, the Debtor has suffered monetary damages including but not limited to attorneys' fees and costs.

27. By negatively impacting the Debtor in its efforts to maximize the value of the Marvell Litigation and communicate with its creditors regarding the value of estate assets, the Preliminary Injunction is intruding upon the jurisdiction of this Court. In the absence of an injunction restraining Marvell from (a) prosecuting the Contempt Action and (b) making any future contempt applications in the Superior Court claiming that the Debtor's actions in this Court violate the

Preliminary Injunction, the Debtor is unable to meet its obligations to the creditors and this Court. Moreover, the Preliminary Injunction and the Contempt Action present an improper intrusion into the jurisdiction of this Court and its power to administer Jasmine's estate.

## PRAYER

WHEREFORE, Jasmine prays judgment as follows:

1. A determination by this Court that the contempt proceedings in the Superior Court violate the Barton Doctrine, the automatic stay, and this Court's exclusive jurisdiction over the administration of this bankruptcy case
2. For a permanent injunction barring any further contempt proceedings against the Debtor, its professionals, and any other representatives of the estate in the Superior Court based upon actions they take in connection with the administration of this estate;
3. For a permanent injunction restraining Marvell from seeking any further relief in any other Court under the Preliminary Injunction based upon actions taken by the Debtor or its counsel in this Court;
4. For damages;
5. For monetary sanctions against Marvell and its counsel;
6. For costs; and

///
///
///
///
///
///

COMPLAINT FOR INJUNCTIVE RELIEF
10

7. For such other and further relief as this Court deems just and proper.

DATED: October 30, 2006

BINDER & MALTER LLP

McGRANE GREENFIELD LLP

By: /s/ Maureen A. Harrington
Maureen A. Harrington
Attorneys for Debtor and Debtor in Possession Jasmine Networks, Inc. and the Official Committee of Unsecured Creditors