Entered on Docket
November 20, 2006
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

The following constitutes
the order of the court. Signed November 20, 2006

*Marilyn Morgan*
**Marilyn Morgan**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASMINE NETWORKS, INC., <br><br>Debtor. | Case No.-02-54815-MM <br><br> Chapter 11 |
| JASMINE NETWORKS, INC., Debtor-in-Possession, <br><br>Plaintiff, <br><br>vs. <br><br>MARVELL SEMICONDUCTOR, INC., a California Corporation, <br><br>Defendant. | Adversary No. 06-5195 <br><br><br>**MEMORANDUM DECISION ON PLAINTIFF'S MOTION TO ENJOIN PROSECUTION OF CONTEMPT PROCEEDINGS** |

## INTRODUCTION

The court heard this matter on November 16, 2006, and based on the written submissions and oral argument, the motion to enjoin Marvell in the contempt action is granted for the reasons explained herein.

## BACKGROUND

In September 2001, Jasmine filed a state court action against Marvell and others in the Superior Court of Santa Clara County, Case No. 1-01-CV-801411. The complaint alleges claims of unfair

1

**MEMORANDUM DECISION AND ORDER**

competition, misappropriation of trade secrets and the violation of California Business & Professions Code § 17200. The claims arise out of alleged misconduct during negotiations between Jasmine and Marvell related to Marvell's desire to acquire intellectual property from Jasmine. Jasmine had intended to use certain evidence, which it claims is the "smoking gun" demonstrating Marvell's liability on the state court claims. Marvell, however, sought and obtained an injunction from the Superior Court, holding that the evidence was a privileged attorney-client communication. The Superior Court order, entered on January 7, 2002, enjoins Jasmine and its attorneys from "[u]sing the [evidence] in furtherance of any legal action" and from "making any references" to the disputed evidence in any court. Jasmine appealed the Superior Court's evidentiary ruling to the California Court of Appeal.

During the pendency of the appeal, Jasmine filed a petition for relief under chapter 11 of the Bankruptcy Code with the intention of liquidating the company through a sale of substantially all assets, making an interim distribution to creditors pursuant to a plan, and prosecuting the state court action in anticipation of paying all claims in full. Throughout the case, Jasmine has acted as a debtor in possession and is charged with administering its bankruptcy estate. The court also appointed Michael Malter to act as Jasmine's general bankruptcy counsel and assist Jasmine with the administration of the estate. In 2002, Jasmine sought relief from the automatic stay to proceed with its state court litigation against Marvell, which this court granted on November 13, 2002. Since then, Jasmine has been prosecuting the state court action for the benefit of Jasmine's creditors.

On April 8, 2004, the California Court of Appeal reversed the Superior Court's injunction with respect to the disputed evidence. The appellate court decision held that Marvell had waived its attorney-client privilege and that Jasmine had made a prima facie showing sufficient to support the crime-fraud exception to the privilege. On July 21, 2004, the California Supreme Court granted Marvell's petition for further review of the Court of Appeal's reversal of the Superior Court's preliminary injunction. However, the California Supreme Court stayed the appeal pending consideration and disposition of an unrelated appeal that involved a related issue.

In March 2005, Marvell filed a motion in Jasmine's bankruptcy case asking this court to appoint an independent examiner. In the motion, Marvell questioned whether Jasmine actually owned the technology that was allegedly misappropriated and asked that an examiner determine the limited issue

2

1  of ownership. In response to Marvell's motion, Jasmine filed a brief opposing the appointment of an
2  examiner. In that brief, Jasmine provided to this court a transcript of the evidence, along with other
3  submissions, to establish the bona fides of Jasmine's state court action. At the request of Marvell, this
4  court sealed all pleadings that incorporated the substance of the disputed evidence but did not strike
5  references to the evidence from the record. The court specifically declined to rule on whether the
6  Superior Court's injunction remained in full force and effect. In the May 12, 2005 ruling on the motion
7  to appoint an examiner, this court explicitly stated on the record that it did not consider the disputed
8  evidence in reaching its ruling and that the decision was not based on the decision of the Court of
9  Appeal.

10  On August 1, 2005, Marvell filed a motion in the state court action asking the Superior Court
11  to hold Jasmine and Malter in contempt of court for including the evidence as part of Jasmine's
12  opposition to the examiner motion in this court. On November 18, 2005, the Superior Court issued an
13  order to show cause why Jasmine and Malter should not be found guilty of contempt. The court denied
14  the alleged contemnors' motion for judgment on the pleadings and held that its earlier injunction
15  prohibiting disclosure of the evidence remains in effect until a remittitur issues from a reviewing court.
16  The contempt proceeding is scheduled for a three day trial commencing December 18, 2006.

17  Jasmine currently is considering a proposed plan that would sell the right to become the majority
18  shareholder of the reorganized debtor. The plan under consideration would allow Jasmine to make an
19  interim distribution to creditors while retaining their ability to realize further recovery contingent on the
20  outcome of the litigation against Marvell.

21
22  **LEGAL DISCUSSION**

23  The Ninth Circuit Court of Appeals has been very concerned with the problems inherent in
24  concurrent jurisdiction. Just last year the Ninth Circuit addressed the precise issue before the court in
25  *Beck v. Fort James Corp. (In re Crown Vantage, Inc.)*, 412 F.3d 963, 970 (9th Cir. 2005), by joining the
26  decisions of numerous circuit courts nationwide emphasizing the significance of the *Barton* doctrine,
27  a common law rule that dates back to 1881. *See Barton v. Barbour*, 104 U.S. 126 (1881). The *Crown*
28  *Advantage* decision is important because it lays out a procedural roadmap.

3

As explained in *Crown Vantage*, the *Barton* doctrine provides that a party must "obtain leave of the bankruptcy court before it initiates an action in another forum against a bankruptcy trustee or other officer appointed by the bankruptcy court for acts done in the officer's official capacity." *Crown Vantage*, 412 F.3d at 970. The Court unambiguously stated that:

> The essence of the *Barton* doctrine is that parties may not commence or maintain unauthorized litigation. The only appropriate remedy, therefore, is to order cessation of the improper action.

*Id.* at 976. The rule extends beyond trustees to other persons appointed by the bankruptcy court, like debtors-in-possession and their court-approved counsel. *Id.* at 970; *Balboa Improvements, Ltd. v. Bartlett*, 99 B.R. 966, 970 (9th Cir. B.A.P. 1989). Even where a state court might otherwise have concurrent jurisdiction over a claim, if the claim is against an officer of a bankruptcy court for conduct in an official capacity, the claimant must first seek the bankruptcy court's permission to proceed. If leave is not requested and received, the state court has no subject matter jurisdiction over the action before it. *Crown Vantage*, 421 F.3d at 971, *citing*, *Barton*, 104 U.S. at 136. Because legal proceedings against an officer of a bankruptcy court may have an effect of the administration of the bankruptcy estate, the bankruptcy court initially should decide whether the proceeding should be determined in the bankruptcy court or elsewhere. *Crown Vantage*, 421 F.3d at 971.

Based on the record before this court, the *Barton* doctrine applies to the pending contempt proceeding. It is a legal proceeding to punish Jasmine and Malter for actions taken in their official duties before this court, namely responding to Marvell's request for the appointment of an independent examiner. The contempt proceeding "initiated an action" against Jasmine and Malter as contemplated by *Crown Vantage*. Under California law, the issuance of an order to show cause regarding an alleged contempt commences a separate action in the ordering court. *People v. Gonzalez*, 12 Cal. 4th 804, 816 (1996). Here, the fact that the contempt proceeding initiated an action is especially plain because it was the first time that Malter was called to appear before the court. The policy underlying the *Barton* doctrine also confirms its applicability. Marvell has asked the Superior Court to impose a fine of at least $8,000 each against Jasmine and Malter as well as to award substantial attorneys fees incurred by Marvell. These monetary sanctions alone are likely to affect the administration of Jasmine's estate.

4

**MEMORANDUM DECISION AND ORDER**

Additionally, prosecution of the contempt proceeding will in all likelihood have a chilling effect upon Jasmine and Malter, who are officially charged with responsibility for administering the estate.

Having determined that the *Barton* doctrine is applicable, the next question is whether or not Marvell has obtained permission from this court to prosecute the contempt proceeding before the Superior Court. This court's order of November 13, 2002, which granted relief from the automatic stay, was broadly worded, lifting the automatic stay "for all purposes as to all parties." However, it is not sufficiently broad to include the contempt proceeding, which, as explained above, initiated a separate action before the Superior Court. The November 13, 2002 stay order was entered three years before the alleged contempt occurred. Prospective relief from the requirements of the *Barton* doctrine was not contemplated by this court and would not have been appropriate. In *Crown Vantage*, the Ninth Circuit adopted a series of factors that a bankruptcy court must consider in determining whether the *Barton* doctrine should be waived. *Crown Vantage*, 421 F.3d at 976, *quoting*, *Kashani v. Fulton (In re Kashani)*, 190 B.R. 875, 886-87 (9th Cir. B.A.P. 1995). Those factors have never been considered by this court. Marvell has not met the procedural prerequisite to proceed with the contempt action.

Looking forward, *if* Marvell decides to request permission to sue Jasmine and its counsel in state court, at that time, this court will balance the interest of all parties involved, considering the non-exclusive *Kashani* factors adopted by the Ninth Circuit. These include:

1. Whether the claims relate to actions performed while administering the estate, including whether the claims constitute a core proceeding;
2. Whether the claims involve an individual acting within the scope of authority under the Bankruptcy Code or any applicable order of the bankruptcy court, so that the officer is entitled to quasi-judicial or derived judicial immunity;
3. Whether the claimant is seeking a judgment, personally, against the court-appointed officer; and,
4. Whether the claims involve the breach of fiduciary duty either through negligent or willful misconduct.

*Kashani*, 190 B.R. at 886-87. Further, in determining whether the equities of the case demand injunctive relief, *Leonard v. Vrooman*, 383 F.2d 556, 560 (9th Cir. 1967), this court will consider a number of other issues. Some of the relevant issues are 1) whether the Superior Court's order should be enforced by a judge of the issuing court, or whether the Superior Court's order should be enforced in the bankruptcy court as the place where the sanctionable conduct occurred; 2) whether to apply the

provisions of California Code of Civil Procedure § 1211 to stay the contempt proceeding until after the California Supreme Court has issued its ruling on the disputed evidence; 3) whether damages can be measured before the California Supreme Court issues its ruling; and, 4) whether and to what extent the contempt hearing will have a disruptive effect on the estate if it were to proceed. Underlying each of these determinations, this court will be guided by fundamental policies that foster and define the relationship between the federal and state judicial systems including the policies against forum shopping and in favor of comity, judicial economy, and deference for the state courts and their orders.

## CONCLUSION

The *Barton* doctrine is applicable to the contempt action. Marvell has failed to follow the procedures established by the Ninth Circuit Court of Appeals to avoid conflicts between courts of concurrent jurisdiction over the actions taken by a court-appointed officer of the bankruptcy court. The result is that, until further order of this court, Marvell is enjoined from proceeding in the contempt action currently pending before the Superior Court of Santa Clara County, Case No. 1-01-CV-801411.

Good cause appearing, IT IS SO ORDERED.

\*\*\*\* END OF ORDER \*\*\*\*

Adv. P. 06-5195

**UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SERVICE LIST**

| | |
|---|---|
| Maureen Harrington<br>MCGRANE GREENFIELD LLP<br>One Ferry Building, Suite 220<br>San Francisco, CA 94111 | Marcia E. Gerston<br>MCGRANE GREENFIELD LLP<br>40 South Market Street, 7th Floor<br>San Jose, CA 95113 |
| K. John Shaffer<br>STUTMAN, TREISTER & GLATT PC<br>1901 Avenue of the Stars, 12th Floor<br>Los Angeles, CA 90067 | Michael Malter<br>Julie Rome-Banks<br>BINDER & MALTER LLP<br>2775 Park Avenue<br>Santa Clara, CA 95050 |
| Peter Bertrand<br>Robert E. Izmerian<br>Julian W. Mack<br>Kim Y. Arnone<br>BUCHALTER NEMER<br>333 Market Street, 25th Floor<br>San Francisco, CA 94105-2126 | Jason McDonnell<br>Roderick A McLeod<br>Susan Q. Haines<br>JONES DAY<br>555 California Street, 26th Floor<br>San Francisco, CA 94104-1500 |